## Gutzeit v. Strader, et al.

(Decided March 20, 1914.)

### Appeal from Fayette Circuit Court.

Injunction—Restraining Intentional Violation of Contract.—An injunction will be granted restraining the violation of a contract not to engage in a certain business for five years in a certain locality, the proof clearly showing that the contract was intentionally violated, although the proof does not clearly show that the plaintiff had sustained at the time the action was brought any considerable damage.

GEORGE C. WEBB and KIMBALL & HUNTER for appellant.

GEORGE W. VAUGHN for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

Prior to May 4, 1911, W. P. Strader was engaged in selling tobacco, liquors, etc., on West Main street, in Lexington. He was doing business in the name of R. S. Strader & Son; his father, R. S. Strader had a number of years before established the business and he had conducted it in this name for some time and had built up a considerable trade. He concluded to go into the real estate business and made a contract with A. C. Gutzeit, which is in these words:

"This contract made and entered into this 4th day of May, 1911, by and between W. P. Strader, doing business under the firm name of R. S. Strader & Son, of the first part, and A. C. Gutzeit, doing business as the Gutzeit Company, as the second part,

Witnesseth: That in consideration of one dollar, cash in hand paid, receipt of which is hereby acknowledged by said first party, and the further consideration of five

thousand, five hundred ($5,500.00) dollars to be paid as hereinafter set forth, first party agrees and binds himself to sell, transfer and convey to second party the following described personal property, to-wit:

"All of the goods, wares, merchandise, fixtures, cigars, tobaccos, liquors, located in the business house now occupied by first party and situated at 112 West Main street, Lexington, Kentucky, said goods to be sold and delivered to second party according to an invoice heretofore made of the same, which invoice is referred to and is made a part of this contract as fully as if set forth herein. The fixed price of said invoice being five thousand, three hundred and seventeen and 74/100 ($5,317.74) dollars, the balance of said purchase price amounted to one hundred and eighty-two and 27/100 ($182,27) dollars, is the consideration for first party's agreement that he will simultaneously herewith agree and bind himself that he will not enter into or engage in business in the city of Lexington directly or indirectly as a wholesaler or retailer of wines, cigars, liquors or tobaccos for a period of five years from this date, and the further consideration that second party shall have the good will of first party" * * *.

Gutzeit paid the price and took possession of the property. Strader, soon after the making of the contract made an arrangement with Shannon and Feiber, who were in the whiskey business in Lexington, by which he had them to fill mail orders which he continued to receive. After doing a mail order business in this way for some months, he organized a corporation under the name of R. S. Strader & Son, the articles providing that it was to engage in the liquor business in Lexington, Kentucky. The corporation only did a mail order business, but it kept its office in Lexington, the whiskey being shipped from Louisville. Later R. S. Strader made an arrangement with his brother, Stewart Strader to become a partner in the liquor business of the Cafe Royal in Lexington, and he solicited orders from the residents of the city of Lexington and other persons for a brand of whiskey which he owned. Gutzeit brought this suit against him for carrying on business in violation of the contract. Upon final hearing the circuit court dismissed the petition. Gutzeit appeals.

The defendant insists that the contract was obtained by fraud that he only sold to Gutzeit the local business that he was doing and did not sell him the mail order

business; that he retained the right to sell the brand of whiskey which he owned and to continue in the mail order business with this whiskey. The proof however fails to show any fraud in the contract and its language does not sustain the view that Strader was to carry on the whiskey business in any way after the sale to Gutzeit. Such contracts have aften been held valid, and this contract having been consummated by the delivery of the goods and the payment of the price, Strader cannot violate it with impunity.

It is earnestly insisted that Strader has really done Gutzeit no substantial injury; that Gutzeit did not handle the brand of whiskey which Strader was selling; that Strader was doing only a mail order business, while Gutzeit was doing only a local business and that Strader's mail order business in no manner interferred with Gutzeit. But by the contract Strader bound himself that he would not enter into or engage in business in the City of Lexington directly or indirectly as a wholesaler or retailer of wines, cigars, liquors or tobacco for a period of five years from its date and that Gutzeit should have his good will. The proof leaves no doubt that he has engaged in the business both directly and indirectly and that Gutzeit has not had his good will. It may be that Gutzeit has done but little mail order business; but where an express contract is violated, the court will not be over-nice in requiring proof of actual loss; for this is hard to be shown. The fact that Strader for some months secretly carried on his business through Shannon and Feiber, is a circumstance entitled to no little weight in determining his good faith and his knowledge that he was violating his contract. His subsequent conduct in forming the corporation, the way in which he did business and his connection with the Cafe Royal are also not without weight. We, therefore, conclude that the contract has been violated and that the circuit court should have enforced it by adjudging the plaintiff the injunction prayed.

Judgment reversed and cause remanded for a judgment above indicated.